UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

**FILED**

AUG 25 2022

Clerk, U. S. District Court
Eastern District of Tennessee
At Knoxville

SARAH WALKER BRUUN,
DAVID RUSSELL AYERS and
BETTY JANE AYERS, in their personal capacities
as residents of and registered voters in Anderson County and
Bradley County, Tennessee, pro se
          Plaintiffs,

                    v.                              Case No. _3:22cv292_
                                                             Varlan/McCook

TRE HARGETT, in his official capacity as
Secretary of State of the State of Tennessee, and
MARK STEPHENS, in his official capacity as
Administrator, Anderson County Election Commission
          Defendants

## COMPLAINT, MOTIONS FOR EMERGENCY ORDERS OF TEMPORARY/PERMANENT RESTRAINING ORDER AGAINST THE USE OF ELECTRONIC VOTING MACHINES & TO PRESERVE ALL VOTING RECORDS FROM 2020 ELECTIONS

SARAH WALKER BRUUN, DAVID RUSSELL AYERS and BETTY JANE

AYERS, pro se        now with this Complaint against TRE HARGETT, in his

official capacity as the Secretary of State of the State of Tennessee and MARK

STEPHENS in his official capacity as the Administrator of Anderson County

Election Commission, for their failure to address claims in their entirety as

presented herein.


### STATEMENT OF GROUNDS FOR FILING IN THIS COURT

As this matter entails the disenfranchisement of our right of suffrage at both

county and state levels, and involves the failure of our county and state government

officials, and our Tennessee legislative members as regards their failure to protect

1

the purity of our ballot box and to take steps as per their oaths and powers under the law to protect us from known threats and to insure the integrity of each of our votes, this Court is believed to be the proper venue under both the Tennessee State Constitution Article 1, § 5, and Article IV, §1, ¶2, and the14th Amendment to the U.S. Constitution, the Elections Clause (Art. I, § 4, cl. 1).[1]

## STATEMENT OF CLAIM

1. As demonstrated herein, the methods by which elections at the local, state, and Federal levels in Tennessee were conducted in 2020 and are being conducted in 2022 cannot be shown to provide the fair elections guaranteed to every citizen under the U.S. and Tennessee Constitutions, per the14th Amendment to the U.S. Constitution, the Elections Clause (Art. I, § 4, cl. 1), Art. I, § 5, and Article IV, §1, ¶2 of the Tennessee Constitution.

2. A cryptographic security risk inherent in all voting machines by design, a Trapdoor mechanism described in Exhibit A, (Attached, Declaration of Terpsehore Maras, Exhibit A, pages 1-37,) makes the output of votes shown in reported election results impossible to reconcile with the ballot inputs, except under a full visual inspection and re-count of all paper ballots cast. For ease of the Court while reading Exhibit A, refer to Exhibit B (Attached, Exhibit B, "*List of abbreviations/explanations for reference in Ms. Maras' affidavit,*" pages 1-3) for a list of abbreviations used in Exhibit A, and their definitions.

---

[1] Plaintiffs have attached affidavits with name, full address, and telephone numbers as they are not attorneys who can easily redact private information from the body of this filing.

2

3. Tennessee's voting systems possess the capability to be accessed by the internet, as demonstrated and sworn to by Tore Maras in the aforementioned Exhibit A, as well as in Exhibit C, hyperlink here Fraction Magic – WEiCU[2] (written link & description on Attachment also titled Exhibit C, page1,) which is a video of Bennie Smith, Shelby County, TN Election Commissioner/Secretary. Bennie Smith also appears also in this video, Exhibit D, of Bennie Smith with Bev Harris/ BlackBoxVoting Fraction Magic - Detailed Vote Rigging Demonstration - YouTube[3], (also Attached as Exhibit D, one page, description with written web site) and in Bennie Smith's attached affidavit, (Exhibit E, pages 1-12,) all of which affirm our voting machines have the ability to be accessed using the internet and our votes switched. This is also attested to not only of Tennessee's, but all the United States' voting machines, by Maria Zack in this video at a hearing before the Kansas Senate: (Exhibit F -here as hyperlink next line, but also attached as Exhibit F with the written link and one page description https://rumble.com/vxw1te-maria-zacks-earth-shattering-testimony-kansas-senate-hearing-mirrored.html.[4] )Maria Zack's testimony is accompanied by this affidavit from the referenced Italian Attorney, (see Exhibit G, one page,) and this accompanying article (see Exhibit H, 6 pages.) Additionally, the machines used in Hamilton County, Tennessee, are Dominion ImageCast machines, like those used in Mason County, Colorado, and for which County Clerk Tina Peters for Mason County, Colorado, had forensic audit reports done for this past election and which show the machines were infiltrated and votes switched (see Exhibit I hyperlink here for all three reports: Election Reports - Tina Peters for Colorado — Tina Peters for Colorado[5] or Exhibit I Report 1, 85 pages, Exhibit I Report 2, 146 pages, and Exhibit I Report 3, 87 pages.)

Plaintiffs spoke with Administrator Stephens of Anderson County, who did agree to preserve and not to destroy 2020 voting records in any form, but he would not

---

[2] Full link here https://weicu.org/fraction-magic if hyperlinnk doesn't work
[3] Full link here https://www.youtube.com/watch?v=Fob-AGgZn44 if hyperlink doesn't work
[4] Full link here https://rumble.com/vxw1te-maria-zacks-earth-shattering-testimony-kansas-senate-hearing-mirrored.html if hyperlink doesn't work
[5] Full link here https://www.tinapetersforcolorado.com/election-reports hyperlink doesn't work

3

agree to switch to voting on paper when presented the majority of the evidence presented herein showing that our machines could be infiltrated, and votes switched. Plaintiffs attempted two times to obtain current EAC certification certificates for Anderson County, Tennessee's voting machines from Administrator Stephens, but upon last request were told he did not have it, to "get that from the state." Other than an update to a non-Anderson County machine, the Hart ECO 1512 Clerical Verity Duo's Certificate on 2/4/22, no further EAC certification of Tennessee's electronic voting machines exists past that which exists in the state records of July 12, 2021, hyperlinked here 20210712_SECMinutes.pdf (tnsosgovfiles.com)[6] titled *"Minutes State Election Commission Meeting July 12, 2021."* In that report's list of **"Approved Voting Machines"- January 11, 2021**which begins on page 8, it can be seen that Anderson County's voting machines, the Hart Intercivic Model No. eslate 3000 does not appear on page 10 of this report, which lists the approved Hart machines. Additionally, despite multiple emails, phone calls to, and two hand-deliveries of our emails with most of the evidence presented herein (with the exception of the Mason County Colorado links above which we did not yet have) with questions to Secretary Tre Hargett over the last three weeks, he has failed to answer or address any of our questions or concerns in any manner.[7] Plaintiffs can find no EAC certification for Anderson County's voting machines in any minutes/reports of the State Election Commission Meetings, we therefore feel Anderson County machines and possibly many others throughout the state are and have not been EAC certified per HAVA law in 2018, 2020, or for the upcoming elections, yet Tennessee took HAVA funding in 2018, 2019, and 2020, which is a violation of Section 231 of the federal statutes of HAVA PUBLIC LAW 107–252—OCT. 29, 2002, codified at 52 U.S.C. 20901 to 21145, according to the Department of Justice's site The Help America Vote Act Of 2002 (justice.gov)[8], rules of which they state they enforce in the second category on their page. The manual for HAVA,

---

[6] Full link here https://sos-prod.tnsosgovfiles.com/s3fs-public/document/20210712_SECMinutes.pdf if hyperlink doesn't work
[7] Plaintiffs will gladly submit documentation of all these letters and phone calls if the Court wishes.
[8] Full link here https://www.justice.gov/crt/help-america-vote-act-2002 if hyperlink doesn't work

4

Section 231 "EAC Voting System Testing and Certification Program Manual," is available here, <u>Cert.Manual.4.1.15.FINAL.pdf (eac.gov)</u>[9] where it can be seen on page 1, *No. 1, 1.2. "Authority. HAVA requires that the EAC certify and decertify voting systems. Section 231(a)(1) of HAVA specifically requires the EAC to "... provide for the certification, de-certification and re-certification of voting system hardware and software by accredited laboratories." The EAC has the sole authority to grant certification or withdraw certification at the Federal level, including the authority to grant, maintain, extend, suspend, and withdraw the right to retain or use any certificates, marks, or other indicators of certification."*

Given the number of machines in use in Tennessee, it is highly likely that some were either connected to the Internet or transmitted data that manipulated votes, denying some in Tennessee our right of suffrage per Article 1, § 5 of the Tennessee Constitution. The probability of changing the votes after the machines read the ballots or have votes punched in is too high to leave such a critical part of the foundation of the United States, free and fair elections, to the intentions of foreign and domestic bad actors who would sway election results at all levels, local, state, and Federal. Evidence supporting the complete depravity of the entirety of our voting system is growing greatly each day. Administrator Stephens told us that "there isn't time to enact a paper voting system" and said he would continue using the machines in response to our requests to eliminate all electronic voting and move to paper ballots only. Lack of time to correct these matters is no excuse to continue in depriving the citizens of Tennessee of the matters voiced herein. We must make the time to address these issues, even if time must be made by delaying elections, and we include herein that the Supreme Court, on August 21, 2022, upheld the right for a State to halt an election until fraudulent matters are corrected:((See exhibit J hyperlink here <u>Supreme Court Halts Georgia Election Until New System</u>

---

[9] Full link here <u>https://www.eac.gov/sites/default/files/eac_assets/1/28/Cert.Manual.4.1.15.FINAL.pdf</u> if hyperlink doesn't work

Is Created (conservativebrief.com)[10] or written link and description on attached
Exhibit J, 4 pages) and see also Exhibit K hyperlink here <u>Georgia elections for two</u>
<u>PSC seats again delayed by U.S. Supreme Court ruling - Georgia Recorder</u>[11] or
written link and description (on attached Exhibit K.)

4. Retention of the November 2020 election data beyond the September 2022
required period is critical to verifying the 2020 election results and to ensuring the
fairness of all future elections.

5. Until an in-person, paper ballot, day-of-election voting process is re-
established, with results reported immediately after the voting period ends,
Americans cannot have any level of confidence that the reported results of any
elections accurately reflect the votes cast.

6. Before and during the November 2020 election, neither of the two Voting
System Testing Laboratories ("VSTLs") typically accredited by the Election
Assistance Commission ("EAC") had current un-expired accreditations.  Therefore,
with no valid Federally approved VSTLs, there could be no such VSTL approval of
Tennessee's voting systems for the November 2020 election. (see Exhibit A)

7. Time is of the essence since the 22-month election data retention
requirement expires relative to the November 2020 election in early September of
2022.

---

[10] Full link here https://conservativebrief.com/created-65771/?utm_source=CB&utm_medium=ABC if hyperlink
doesn't work
[11] Full link her https://georgiarecorder.com/brief/georgia-elections-for-two-psc-seats-again-delayed-by-u-s-
supreme-court-ruling/ if hyperlink doesn't work

8. The following diagram illustrates the simplified election process and claims raised here; the critical piece is the "Black Box / Trapdoor Code", which is undetected by design and can be used, as Exhibit A shows, to completely remove the link between the ballot inputs and "vote" outputs:



## II. PARTIES

9. Plaintiffs are residents and registered voters of the State of Tennessee.

10. Defendant Hargett is named in his official capacity. Defendant Hargett is the Secretary of State for the State of Tennessee. Defendant Stephens is named in his official capacity. Defendant Stephens is the Administrator of the Anderson County Election Commission, County of Anderson, Tennessee.

## III. JURISDICTION AND VENUE

11. Plaintiff incorporates the foregoing paragraphs as if set forth in full herein.

12. It is believed this Court has personal jurisdiction as this Court handles the County, State and Federal election matters in this case.

13. It is believed this Court has subject matter jurisdiction over these civil claims regarding election machines. Plaintiffs ask this Court for leniency under pro se law as regards legal terms, form, citation or lack thereof, and use instead its power under the Constitutional right of redress of We the People and pro se law for fashioning a remedy fit for the severity of the facts presented herein.

7

14. Venue is proper because Defendants perform their official duties in the County of Anderson and the State of Tennessee, the latter affecting every County therein.

15. Tennessee elections were conducted in 2020 and are planned to be conducted in 2022 in a manner that cannot ensure that each vote cast is counted as cast. The voting systems and equipment used in the November 2020 election, and to be used in the November 2022 elections in Tennessee are manufactured by five companies: Hart, MicroVote, Unisyn, ES&S and Dominion, and can be found here at the Tennessee Secretary of State's web site link: (Exhibit L link: Voting Systems by County (07-2022).pdf (tnsosgovfiles.com[12])or the same list, attached as Exhibit L, 3 pages, Tennessee Voting Systems by County.)

16. All voting systems in use in Tennessee and the United States, now and in 2020, are subject to tampering through a Trapdoor mechanism inherent in all election systems. This Trapdoor mechanism is described in detail in Exhibit A, affidavit of Terpsehore Maras, filed under penalty of perjury on December 1, 2020 in case #2:20-cv-01771-PP Feehan v. Wisconsin Elections Commission (2:20-cv-01771) District Court, E.D. Wisconsin.

17. The key aspect and summary of the sometimes-technical affidavit Exhibit A, in layman's terms, is its paragraph 61: "Hence, you can't prove anyone manipulated anything. The TRAP DOOR KEY HOLDERS can offer you enough to verify to you what you need to see without revealing anything and once again indicating the inability to detect manipulation. ZERO PROOF of INTEGRITY OF THE VOTE."

18. The problem with verifying that any voting machine system gives a fair outcome, where the votes output are identical to the votes input, is that due to the Trapdoor mechanism it is impossible to prove that the election was fair. All of this is the responsibility of the Secretary of State, but he refuses to respond.

---

[12] Full link here https://sos-prod.tnsosgovfiles.com/s3fs-public/document/Voting%20Systems%20by%20County%20%2807-2022%29.pdf?VersionId=IQxujfCbugOUDwGg6vO_q7UBXRXi.fFe if hyperlink doesn't work

8

19. It is also impossible to prove that the election was unfair, but the burden is on the State to prove that its systems are not only capable of conducting, but in fact, conducted, a fair election. This is an impossibility, as Exhibit A demonstrates. Extensive evidence exists, presented herein, that voting machine systems used in Tennessee have the capability to connect to the internet, and given the number of machines in use, it is extremely improbable that no machines were connected to the internet in the November 2020 election and that none were accessed through trapdoor, or wired or wireless external networks.

20. Exhibit A further explains the Federal Help America Vote Act of 2002 ("HAVA") provides for the accreditation of voting systems by Voting Systems Testing Laboratories ("VSTLs") and requirements for EAC certification. States can opt out, but Tennessee applied for and received 2018 through 2020 HAVA funding, despite lack of EAC certification and/or expired VSTL certification on the EAC certificates, rendering EAC certification null and void under federal law. See amounts Tennessee received in 2020 on (attached exhibit K, pages 4, 8, 13 & 16 of the report "THE U.S. ELECTION ASSISTANCE COMMISSION 2020 GRANT EXPENDITURE REPORT July 2021), and see pages 4, 6 and 10 for 2019 funds Tennessee received (on attached Exhibit M 2019 EAC Annual Grant Expenditure Report,[13] Report 1, 11 page report, see pages 4,6, and 10) and see (attached Exhibit M, pages 4, 6, and 8 of 2018 HAVA Grants Expenditure Report) for HAVA funds received in 2018, but as related prior to this and in Exhibit A, EAC certification is a requirement for a state to legally receive HAVA funding, and no EAC certification has been provided this year when Plaintiffs asked, nor can certification or valid certification be found for these years in question- again, against federal statutes. Additionally, see amounts Tennessee received in Grant Expenditure Report Fiscal Year 2018 in Report 2, 15 pages, and lastly in Exhibit M see 2020 Grant Expenditure Report July 2021, 17 pages.)

---

[13] Full link here
https://www.eac.gov/sites/default/files/paymentgrants/expenditures/2019_EAC_Annual_Grant_Expenditure_Report.pdf if hyperlink doesn't work

Curiously, and likely against the law, on pages 2 and 3 of the minutes of our Tennessee State Election Committee Meeting for April 13, 2020, several members of the Committee made motions and voted to suspend the rules for approval of voting machines, which was actually a suspension of federal law, which is likely beyond the scope of this committee's power: hyperlink here, 20200413_SECMinutes.pdf (tnsosfiles.com) [14] - see Page 2 and part of 3 on following pages:

---

[14] Full link here https://sos-tn-gov-files.tnsosfiles.com/20200413_SECMinutes.pdf if hyperlink doesn't work

<u>Old Business</u>
- **NONE**

<u>New Business</u>

- **Hart InterCivic - Alli Fick, Certification Project Manager**

Alli Fick, Certification Project Manager for Hart InterCivic made the presentation before the commission. **(See attached presentation provided by Hart InterCivic.)**

  - o **Verity Voting 2.4 (Modification to Verity 2.3)**

Commissioner Blackburn made a motion to suspend the rules for certification of voting machines due to Covid-19, and to approve Hart InterCivic Verity Voting 2.4, seconded by Commissioner Wallace. The motion to approve Verity Voting 2.4 was unanimously approved. (Aye votes: Barrett, Blackburn, Duckett, McDonald, Wallace, Wheeler and Younce; No votes: None; Abstention: None.)

  - o **De Minimis Change to Verity 2.3**

Commissioner McDonald made a motion to suspend the rules for certification of voting machines due to Covid-19, and to approve the De Minimis changes to Verity 2.3, seconded by Commissioner Barrett. The motion to approve the De Minimis change to Verity Voting 2.3 was unanimously approved. (Aye votes: Barrett, Blackburn, Duckett, McDonald, Wallace, Wheeler and Younce; No votes: None; Abstention: None.)

- **Dominion – Ian Piper, Director of Certification**
Ian Piper, Director of Certification for Dominion made the presentation before the commission. **(See attached presentation provided by Dominion Voting.)**

  - o **Democracy Suite - 5.5B (Modification to Democracy Suite – 5.5)**

Commissioner Barrett made a motion to suspend the rules for certification of voting machines due to Covid-19, and to approve the modification changes of Democracy Suite 5.5 to Democracy Suite 5.5B, seconded by Commissioner McDonald. The motion to approve the Democracy Suite 5.5B was unanimously approved. (Aye votes: Barrett, Blackburn, Duckett, McDonald, Wallace, Wheeler and Younce; No votes: None; Abstention: None.)

11

Commissioner Wallace made a motion to suspend the rules for certification of voting machines due to Covid-19, and to approve the ECO 100630 Central Scanner to the Cannon COTS scanner, seconded by Commissioner Duckett. The motion to approve the central scanner was unanimously approved. (Aye votes: Barrett, Blackburn, Duckett, McDonald, Wallace, Wheeler and Younce; No votes: None; Abstention: None.)

21. On page 28 of the **Staff Report to Members of the Tennessee Advisory Commission on Intergovernmental Relations**, December 2018 issue: web link here: Tennessee's Election Security: A Staff Update (tn.gov)[15] they indicated their concerns about "a number of potential vulnerabilities in election infrastructure," they listed their concerns and listed some measures taken, but stated "**more needs to be done,**" and made no effort to protect us from the vulnerabilities they admitted they knew about. Linked above, but included here for ease of the Court:

*"Despite the progress on communication and improvements to the security of our election process, the Committee remains concerned about a number of potential vulnerabilities in election infrastructure.*

*• Voting systems across the United States are outdated, and many do not have a paper record of votes as a backup counting system that can be reliably audited, should there be allegations of machine manipulation. In*

---

[15] Full link her https://www.tn.gov/content/dam/tn/tacir/2018-publications/2018_Elections.pdf if hyperlink doesn't work

12

*addition, the number of vendors selling machines is shrinking, raising concerns about supply chain vulnerability.*

*o Paperless Direct Recording Electronic (DRE) voting machines—machines with electronic interfaces that electronically store votes (as opposed to paper ballots or optical scanners)—are used in jurisdictions in 30 states and are at highest risk for security flaws. Five states use DREs exclusively.*

*• Many aspects of election infrastructure systems are connected to and can be accessed over the internet. Furthermore, systems that are not connected to the internet, such as voting machines, may still be updated via software downloaded from the internet.*

*o These potentially vulnerable systems include some of the core components of U.S. election infrastructure, including systems affiliated with voter registration databases, electronic poll books, vote casting, vote tallying, and unofficial election night reporting to the general public and the media. Risk-limiting audits are a best practice to mitigate risk.*

*• Vendors of election software and equipment play a critical role in the U.S. election system, and the Committee continues to be concerned that vendors represent an enticing target or malicious cyber actors. State local, territorial, tribal, and federal government authorities have very little insight into the cyber security practices of many of these vendors, and while the*

13

*Election Assistance Commission issues guidelines for Security, abiding by those guidelines is currently voluntary.*

### *Summary of SSCI Recommendations*

*The Senate Select Committee on Intelligence has examined evidence of Russian attempts to target election infrastructure during the 2016 U.S. elections. The Committee has reviewed the steps state and local election officials have taken to ensure the integrity of our elections and agrees that U.S. election infrastructure is fundamentally resilient. The Department of Homeland Security, the Election Assistance Commission, state and local governments, and other groups have already taken beneficial steps toward addressing the vulnerabilities exposed during the 2016 election cycle, including some of the measures listed below, but more needs to be done."* . . .

On page 3 of *The Tennessee Advisory Commission on Intergovernmental Relations' Legislative Update, June 15, 2022 Memorandum,* link here: Tab 4 Legislative Update (tn.gov) ,[16] it can be seen they reported that the 112th General Assembly considered election security matters, a topic they had previously studied since 2007, but failed to make any rulings to protect the vote of we the people of Tennessee against these known internet vulnerabilities—linked above, but included below for ease of the Court:

---

[16] Full link is https://www.tn.gov/content/dam/tn/tacir/commission-meetings/2022june/2022June_Tab4LegisUpdate_Memo.pdf if hyperlink can't be used

14

"Elections

*The 112th General Assembly considered a variety of bills related to election security, a topic the Commission has studied previously, both in its 2007 staff report, Trust but Verify: Increasing Voter Confidence in Election Results, and in a 2018 staff report, Tennessee's Election Security: A Staff Update. Both of these reports recommended that the state adopt voting machines that allow for voter-verifiable paper audit trails. This year the General Assembly did pass Senate Bill 2558 by Jackson and House Bill 2331 by Bricken, which requires that every voting machine used by a county election commission produce a voter-verifiable paper record by default, rather than just have the capability of doing so. The law requires voting machines meet this standard by January 1, 2024. The 112th General Assembly considered but did not pass two similar bills, Senate Bill 687 by Gilmore and House Bill 689 by Beck, along with Senate Bill 2113 by Yarbro and House Bill 2239 by Freeman. The General Assembly also considered Senate Bill 1865 by Jackson and House Bill 1883 by Rudd, which would have required the secretary of state to conduct forensic audits of at least five counties after every statewide election, starting in 2024. And Senate Bill 2617 by Niceley and House Bill 2827 by Parkinson would have conditioned the use of voting machines to the approval of the local governing body.*"

22. As shown above, our Tennessee Legislature has been aware of the threat to the security of our elections, but has failed to enact the numerous requirements as to procedure and safeguards as required in Article 1, § 4 and §5, Election Clauses of our Constitution:

*"State authority to regulate the times, places, and manner of holding congressional elections has been described by the Court as "embrac[ing] authority to provide a complete code for congressional elections …; in short, to enact the numerous requirements as to procedure and safeguards which experience shows are necessary in order to enforce the fundamental rights involved." Smiley v. Holm, 285 U.S. 355, 366 (1932.)*

23. Despite Plaintiffs asking Mark Stephens, Anderson County's Election Commission Administrator many times to provide the certification for our county's voting machines, he could and/or would not provide such, the last time telling us to contact the state for certification. Plaintiffs contacted Secretary of State Tre Hargett multiple times via email, phone, affirmed hand-delivery of these emails by two of his assistants, and made follow-up inquiry phone calls, but our Secretary of State failed to answer any questions in any manner- he has not returned any phone call or email over the three-week period prior to this filing. Because elections happen in mere weeks, we the people therefore assert our right to redress as per the Constitution and now ask this Court for an emergency Temporary Restraining Order against the use of all electronic voting machines in Tennessee until this matter is fully investigated and remedied.

16

24. In particular, the model of voting machines used by Anderson County, Tennessee, the Hart Intercivic Model No. eslate 3000, Serial No AOB1 A7 US Patent # 6,250,548B1, appears to lack EAC certification as it has not been given when requested by Administrator Stephens, and Secretary Hargett refuses to answer, and Plaintiffs cannot find that model on the State of Tennessee Department of State Division of Elections' Approved Voting Machines – January 11, 2021, nor is it on the list of Approved Voting Machines Currently in Use or Marketed in Tennessee as of July 7, 2021. Regardless of machine type, the attached sworn affidavits and forensic reports from Ms. Maras, Mr. Smith, Ms. Zack, and Ms. Peters, all demonstrate and *prove* how most, if not all of the voting machines on the two Tennessee State lists above or on Exhibit J have been and are able to be infiltrated and thus our voting results have been compromised.

25. Plaintiffs have shown with attached evidence that our electronic voting machines are compromised, likely in totality, across our state and have shown that our legislative members have failed in their duty to provide for safeguards in this matter. We have shown that our legislation was aware of these electronic threats, but kept parking bills in committee, and passed no legislation to protect us from these known threats. For our legislative members to knowingly fail to protect our vote(s) from being subverted is a violation of the oaths they swore to uphold in both our State Constitution and our Constitution as per Amendment XIV, § 3 of our Constitution:

*"No person shall be a Senator or Representative in Congress, or elector of President and Vice-President, or hold any office, civil or military, under the United States, or under any State, who, having previously taken an oath, as a member of Congress, or as an officer of the United States, or as a member of any State legislature, or as an executive or judicial officer of any State, to support the Constitution of the United States, shall have engaged in insurrection or rebellion against the same, or given aid or comfort to the enemies thereof. But Congress may by a vote of two-thirds of each House, remove such disability."* Askance for consideration of these very serious matters is made in the demands herein for their failure to protect against the known subversion of our vote.

26. We have additionally shown how many of our machines are and were not certified for this election, nor the 2020 and 2018 elections, according to EAC standards, yet our state took HAVA funding in 2018 and 2020, likely in violation of Federal Statutes. Likewise, our Secretary of State, Tre Hargett, has failed to act on our behalf in this matter despite multiple notifications.

27. In the list of approved voting machines included in the 7-19-2018 *Minutes of the State Election Commission Meeting*, beginning page 158 of hyperlink Exhibit N 20180709 SECMinutes.pdf (tnsosfiles.com)[17] ( copy of which is Attached, 3 pages Exhibit N), please note Anderson County's voting machine, the Hart InterCivic Model No. eslate 3000 is not included on this list and does not appear to be certified, as one Plaintiff has combed through the minutes and verified that no EAC certification exists, in keeping with what is attested in Exhibit A- the VSTL certifications are expired for all of the EAC certificates presented, rendering the EAC certificates invalid for all the states' voting machines, leaving the machines uncertified per HAVA standards, and the state in violation of federal statutes for receiving HAVA funding without valid EAC certification.

28. The Supreme Court of the United States has recognized that the right to vote consists of not only casting a ballot, but having that vote counted

---

[17] Full link here https://sos-tn-gov-files.tnsosfiles.com/20180709 SECMinutes.pdf if hyperlink doesn't work

18

accurately, as it was cast.

29. "We regard it as equally unquestionable that the right to have one's vote counted is as open to protection by Congress as the right to put a ballot in a box." *See United States v. Mosley, 238 U.S. 386 (1915)*

30. "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." *See Wesberry v. Sanders, 376 U.S. 17 (1964)*

31. "No one would deny that the equal protection clause would . . . prohibit a law that would expressly give certain citizens a half-vote and others a full vote. . . . [T]he constitutionally guaranteed right to vote and the right to have one's vote counted clearly imply the policy that state election systems, no matter what their form, should be designed to give approximately equal weight to each vote cast. . . . [A] state legislature cannot deny eligible voters the right to vote for Congressmen and the right to have their vote counted." *See Reynolds v. Sims, 377 U.S. 563 (1964), citing Colegrove v. Green, 328 U.S. 549, 328 U.S. 569-571*

32. By utilizing voting machines subject to the Trapdoor mechanism described in Exhibit A, Tennessee has deprived its voters of the capability of knowing that their vote was accurately counted.

## DEMAND FOR JUDGMENT

A) Plaintiff repeats and re-alleges every allegation contained in the foregoing paragraphs as if fully plead herein.

B) Considering the above and attached, Plaintiffs have clearly shown our vote has the means to be disenfranchised and will continue to be in danger of such if continued use of electronic machines is allowed. Therefore, Plaintiffs demand the order of a full forensic audit and investigation of Tennessee's November

19

2020 election results, data and electronic machines, and additionally demand an immediate order for the preservation of all 2020 election data and records be they on paper, electronic machinery or attachments, printers or accessories of any kind or any other form for the 2020 election, as this data is critical to election integrity and is scheduled to be destroyed in mere days. A full audit of the November 2020 election data would show whether any voting system in any County in Tennessee was connected to the internet by the hidden trapdoor mechanism outlined in Exhibit A. Preservation of this data is critical to election integrity. Irreparable harm will be suffered if these records are destroyed, as there will be no way to prove the integrity of our vote.

C) Plaintiffs make demand for an emergency temporary/permanent injunction restraining order against the use of any electronic voting equipment or method in the State of Tennessee until this investigation is complete.

C) Plaintiffs make demand for an order that all future elections in Tennessee be conducted using the paper ballot method described in Exhibit A, and that a method such as hourly repetitive public service announcements on Tennessee's television news stations and a variety of radio stations throughout the entirety of the state be put in place to make a state-wide call for volunteers to make this happen. Our citizens will undoubtedly answer and once again live up to what we are famous for.

E) Demand is made to order Defendant Hargett or his successor to re-

tabulate the results of every county in Tennessee for the 2020 elections, using our state's volunteers to verify each vote from ballot results from every electronic machine with each voter, then tabulate and compare that result to the 2020 tabulations to assure the integrity of each and every outcome, and decertify any 2020 election result if new, verified results do not match what was tabulated for the 2020 elections.

F) Demand is made for this Court to take action as it sees fit to legally and rightfully address the actions/lack of action of Defendants and each State Election Committee and Legislative Member who failed to act, as was their duty, to protect our vote when told multiple times of these threats, who made motion to suspend federal rules and lower the standard of protection of the integrity of our vote , and who failed to pass waiting legislative protection against these known threats to our vote and left the legislation parked, because to knowingly fail to act, and to knowingly proceed to participate in any way with the subversion of the vote of the people is a serious matter. We the people can fill the seats of any vacancies left in these elected seats, until elections can be held.